IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FELISHA CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACT. NO. 1:21-cv-63-ECM |
| | ) [WO] |
| THE HOUSTON COUNTY HEALTH CARE | ) |
| AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is The Houston County Health Care Authority's ("Defendant" or "Houston") partial motion to dismiss. (Doc. 6). Felisha Chambers ("Plaintiff" or "Chambers") brought this action against the Defendant, her former employer, alleging that the Defendant discriminated against her because of her disability and race. Specifically, Chambers brings claims against the Defendant for failure to accommodate in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA") (Count 1); disability discrimination in violation of the ADA (Count 2); retaliation in violation of the ADA (Count 3); race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count 4); and retaliation in violation of Title VII (Count 5). (Doc. 1).

In its motion, the Defendant requests dismissal of the Plaintiff's failure to accommodate and disability discrimination claims (Counts 1–2) for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6 at 1). For the reasons that follow, the Defendant's motion (doc. 6) is due to be DENIED.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

2

(citation omitted).  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citation omitted).

### IV.  FACTS[1]

In January 2018, Chambers began working for Houston as a Mental Health Technician in the Behavioral Medicine Unit ("BMU").  Chambers has been diagnosed with anxiety, anemia, insomnia, and sarcoidosis.[2]  These physical and mental impairments substantially limit her major life activities, including sleep, concentration, reasoning, anxiety, mood, emotional control, and thought processes.  They also place her at a higher risk of serious complications if she contracts COVID-19.

Due to the COVID-19 outbreak in March 2020, Houston began to furlough or reassign employees to different departments throughout the hospital.  Chambers asked her supervisor that she be assigned to "non-Covid floors"[3] as an accommodation for her disabilities and the attendant risks associated with COVID-19.  Chambers' request was granted, and she was placed on a "non-Covid floor."

---

[1] This recitation of the facts is based upon the Plaintiff's complaint.  The Court recites only the facts pertinent to resolving the Defendant's motion (doc. 6).  At this stage of the proceedings, for purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

[2] "Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of your body — most commonly the lungs and lymph nodes." *Sarcoidosis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last visited Sept. 17, 2021).

[3] The Court's reference to "non-Covid floors" reflects the Plaintiff's description in her complaint.

The Plaintiff does not define "non-Covid floor."  Viewing the factual allegations in the light most favorable to the Plaintiff, the complaint reasonably implies that "non-Covid floors" did not have any (known) COVID-19 patients.  At this stage, the Court accepts the reasonable inference suggested by the Plaintiff that the floors or departments with COVID-19 patients posed a substantially higher risk of COVID-19 exposure to her compared to the "non-Covid floors" or "departments" that did not have COVID-19 patients.

Approximately three weeks later, Houston implemented the "Labor Pool." The Labor Pool comprised all available hospital positions that were to be filled each day. Employees reported to the Labor Pool supervisor at the beginning of each shift for their job assignments. Chambers' first Labor Pool assignment was in the Emergency Department with COVID-19 patients. After Chambers requested a different location, she was assigned to the Cancer Center, a "non-Covid department." She also reminded her supervisor about her request for an accommodation to work in available departments on "non-Covid floors." Despite her requests for an accommodation, Chambers was "repeatedly assigned to positions and departments with Covid patients." (Doc. 1 at 4, para. 15).

On or about May 1, 2020, Chambers was again assigned to the Emergency Department with COVID-19 patients. She tried to call her supervisor to ask if there were other available positions that day in "non-Covid departments" as an accommodation for her disabilities; however, her supervisor refused to take or return her calls. Chambers then spoke to the Labor Pool supervisor, and Chambers was re-assigned to work at the Information Desk, a "non-Covid department."

Around the same time, there were at least four BMU employees who were allowed to continue working in the BMU, a "non-Covid department." However, Chambers was told by her supervisor that she could not return to the BMU and needed to continue to report to the Labor Pool.

Also on or about May 1, 2020, Chambers received a new work schedule that changed her work days and hours. Among other things, the new schedule required her to

4

work on May 10, 2020.  Chambers informed the Labor Pool scheduling coordinator that because her original schedule had not required her to work on May 10, 2020, she could not come into work that day because she did not have childcare.  On or about May 26, 2020, Chambers was told she was being terminated for not coming to work on May 10, 2020.

## V.  DISCUSSION

The Defendant moves to dismiss the Plaintiff's failure to accommodate and disability discrimination claims.  It argues only that the Plaintiff has not stated a plausible claim for relief because she has not shown that she is a qualified individual with a disability.  In response, the Plaintiff argues that she pleaded sufficient facts to withstand the Defendant's motion to dismiss.  The Court turns first to the failure to accommodate claim.

### A. Failure to Accommodate

The Defendant argues that the Plaintiff is not a qualified individual with a disability because her requested accommodation was not reasonable.  To survive a motion to dismiss, an employment discrimination plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell Douglas*[4] framework. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002); *id.* at 510 (explaining that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement"); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015).  Instead, the plaintiff is required only to plausibly set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. at 508 (quoting FED. R. CIV. P. 8(a)(2)).

---

[4] In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court set forth the now familiar burden-shifting framework for proving intentional discrimination using circumstantial evidence.

Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has pleaded sufficient facts to plausibly suggest that the Defendant discriminated against her because of her disabilities.

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." *Id.* § 12111(8). "[T]he term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee . . . ." *Id.* § 12112(b)(5)(A). "Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified'. . . ." *Holly v. Clairson Indus.*, 492 F.3d 1247, 1262 (11th Cir. 2007).

The Defendant asserts that the Plaintiff is not a qualified individual because her requested accommodation—that she be "assign[ed] . . . to exclusively non-Covid floors"— was not reasonable. (Doc. 6 at 6). According to the Defendant, such accommodation was not reasonable "because it is not physically possible." (*Id.*). The Defendant contends that "there is no place in the hospital where Plaintiff could work that would keep her from potential exposure to Covid positive coworkers or patients." (*Id.*). The Defendant further asserts that the Plaintiff is "[e]ssentially . . . requesting to work away from any potential

6

Covid patients," and that such request "is not a reasonable accommodation for a hospital employee during a pandemic." (*Id.* at 6–7) (emphasis omitted).  Finally, the Defendant asserts that the Plaintiff's requested accommodation was not reasonable because it would not allow the Plaintiff to perform her essential job functions.  According to the Defendant, the Plaintiff "[e]ssentially. . . is alleging that she cannot work in the hospital itself because she might be exposed to Covid," and if the Plaintiff "cannot be in the hospital, she cannot perform her essential duties." (*Id.* at 8).

The Defendant's argument fails because it rests on an interpretation of the complaint that does not view the facts and reasonable inferences in the light most favorable to the Plaintiff.  As the Plaintiff correctly points out, she does not allege that she requested for her Labor Pool assignments to be in departments where there was no chance of COVID-19 exposure.  Instead, she alleges that she requested to be assigned to an available "non-Covid floor" or "non-Covid department" where the risks of COVID-19 exposure were lower, even if not non-existent. (Doc. 1 at 3, para. 11; 4, para. 19).  At this stage the Court must accept as true her allegations that there were "non-Covid floors" or "departments" available and the reasonable inference that those floors and departments did not have (known) COVID-19 patients.  Thus, the Defendant's argument that the requested accommodation was not reasonable because it was "not physically possible" is unavailing at the motion to dismiss stage.

Additionally, the Plaintiff does not allege that she could not work in the hospital at all or that she requested not to be in the hospital.  Indeed, she identifies multiple "non-Covid departments" where she could (and sometimes did) work: the BMU, the Cancer

7

Center, and the Information Desk.  Thus, the Defendant's argument that the requested accommodation would not allow the Plaintiff to perform her essential job duties because she could not be in the hospital may be appropriate at summary judgment but is unavailing at this stage.  *Cf. Willis v. Conopco, Inc.*, 108 F.3d 282, 283, 286 (11th Cir. 1997) (per curiam) (affirming grant of summary judgment on failure to accommodate claim where plaintiff's own doctor stated there were was nowhere in defendant's building that plaintiff could safely work because of her disability).

The Plaintiff alleges that she suffered from physical and mental impairments that put her at a higher risk of serious COVID-19 complications.  The Plaintiff requested, as an accommodation for her disabilities, that she be assigned to work in available positions on "non-Covid" floors or departments to limit her risk of COVID-19 exposure.  She alleges there were multiple "non-Covid departments" available where the Plaintiff could (and sometimes did) work, including the BMU, the Cancer Center, and the Information Desk.  These allegations, which the Court must accept as true, are sufficient at this stage to support that the Plaintiff's requested accommodation was reasonable and that she was a qualified individual with a disability. *Cf. Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527 (11th Cir. 1997) ("[W]hat is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation.").  Despite the available positions in "non-Covid departments" and the Plaintiff's requests for an accommodation, the Plaintiff was repeatedly assigned to departments with COVID patients.  Accordingly, the Plaintiff has alleged sufficient facts to state a plausible

claim that the Defendant failed to accommodate her in violation of the ADA, and the Defendant's motion to dismiss the failure to accommodate claim is due to be DENIED.

### B. Disability Discrimination

The Defendant also argues that the Plaintiff cannot state a plausible claim of disability discrimination. The Defendant relies on the same arguments that it made with regard to the failure to accommodate claim. Specifically, the Defendant argues that the Plaintiff is not a qualified individual with a disability because her requested accommodation is not reasonable and would not allow her to perform her essential job duties. For the reasons discussed above in Part V.A., these arguments are unavailing at the motion to dismiss stage. The complaint's allegations, taken as true, are sufficient at this stage to demonstrate that the Plaintiff's requested accommodation was reasonable and that she was a qualified individual with a disability, and they are sufficient to survive the Defendant's motion to dismiss. Accordingly, the Plaintiff has alleged sufficient facts to state a plausible claim that the Defendant discriminated against her in violation of the ADA, and the Defendant's motion to dismiss the disability discrimination claim is due to be DENIED.

### VI. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendant's partial motion to dismiss (doc. 6) is DENIED.

DONE this 20th day of September, 2021.

                                        /s/ Emily C. Marks
                                    EMILY C. MARKS
                                    CHIEF UNITED STATES DISTRICT JUDGE